O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SANITEC INDUSTRIES INC., | § |
| | § |
| Plaintiff/ | § |
| Counterclaim Defendant, | § |
| | § |
| v. | §   CIVIL ACTION NO. H-04-3066 |
| | § |
| MICRO-WASTE CORPORATION, | § |
| | § |
| Defendant/ | § |
| Counterclaim Plaintiff. | § |

MEMORANDUM AND ORDER

Pending is Plaintiff/Counterclaim Defendant Sanitec Industries Inc.'s Rule 12(b)(6) Motion to Dismiss Counts II-IV of Micro-Waste's Counterclaims (Document No. 11).  Plaintiff filed a reply to Micro-Waste's counterclaim before filing this motion and the motion is therefore untimely.  See FED. R. CIV. P. 12(b)(6).  Nonetheless, the Court will consider the motion as a motion for judgment on the pleadings under Rule 12(c).  See Jones v. Grenninger, 188 F.3d 322, 324 (5th Cir. 1999).  After having reviewed the motion, response, and the applicable law, the Court concludes as follows:

I.  Background

Plaintiff/Counterclaim Defendant Sanitec Industries Inc. ("Industries") brings this action against Defendant Micro-Waste

Corporation ("Micro-Waste") for infringement of United States Patent No. 5,270,000 (the "'000 patent"), entitled "Apparatus and Process for Treating Medical Hazardous Wastes."  Document No. 1 ¶ 11.[1]  Industries alleges that it is the "owner of the entire right, title, and interest in" the '000 patent and the related trademarks, and further alleges that Micro-Waste has made, used, sold, and/or offered for sale products within the scope of one or more claims of the '000 patent.  Id. ¶¶ 11-12, 26-41.  Accordingly, Industries seeks a judgment of willful patent infringement, a permanent injunction against continuing infringement, monetary damages for past infringement, and declaratory judgment that a license agreement between Micro-Waste and non-party Sanitec Group, LLC is void *ab initio* and of no legal force or effect.  Id. ¶¶ 42-51.  Industries also alleges that Micro-Waste has committed fraud, conversion, and violated the Lanham Act and Texas unfair competition laws.  Id. ¶¶ 52-74.

Micro-Waste counterclaims against Industries for breach of contract, tortious interference with contractual relations, and violations of the Lanham Act and seeks a declaratory judgment of patent invalidity, unenforceability, and non-infringement. Industries's pending motion is to dismiss Micro-Waste's tortious interference and Lanham Act counterclaims, arguing that because

---

[1] The technology covered by the '000 (the "Technology") "uses a series of microwave generators to disinfect medical waste in an environmentally sound manner."  Document No. 1 ¶ 9.

Micro-Waste does not allege that Industries acted in bad faith, Micro-Waste has failed to state claims sufficient to avoid preemption by federal patent law. Industries also contends that Micro-Waste fails to state a claim for declaratory judgment of unenforceability of the '000 patent because Micro-Waste has not alleged that the patent applicant acted with an intent to deceive or mislead the U.S. Patent and Trademark Office ("PTO"), or in the alternative, because Micro-Waste's allegations do not comply with Federal Rule of Civil Procedure 9(b). Finally, Industries argues that Micro-Waste has neither pleaded the elements of a § 2 Sherman Act claim nor alleged facts that would support such a claim, and that in any event, Micro-Waste has failed to allege facts "sufficient to strip Industries of *Noerr-Pennington* immunity."

## II. Standard of Review

A Rule 12(c) motion for judgment on the pleadings based on a failure to state a claim is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Boswell v. Honorable Governor of Tex., 138 F. Supp. 2d 782, 785 (N.D. Tex. 2000); *see also* St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir. 1991).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district

court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). Dismissal of a claim is improper "unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

"The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests." Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977). Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears

the burden of proving that "no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. Hishon v. King & Spalding, 104 S. Ct. 2229, 2232 (1984). While the district court generally may not go outside the complaint in addressing a Rule 12(b)(6) motion, it may consider documents attached to the complaint, as well as documents that are referenced in and central to the complaint. *See* Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 839 (5th Cir. 2004); Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003).

### III.  Discussion

A.  Tortious Interference and Lanham Act Claims

In Counts II and III of its counterclaim, Micro-Waste asserts against Industries a state law claim for tortious interference with contractual relations and a claim under § 43(a) of the Lanham Act. *See* Document No. 7 ¶¶ 125-132.[2]  Industries argues that because bad faith is not alleged, Micro-Waste has failed to state claims sufficient to avoid preemption. *See* Document No. 11 at 1, 3-9.

"[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d

---

[2] Both Industries and Micro-Waste argue these similar claims together.

5

1367, 1374 (Fed. Cir. 2004) (citing Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999). Thus, state law claims "can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." Globetrotter, 362 F.3d at 1374; Zenith, 182 F.3d at 1355 ("[B]ad faith is a prerequisite to [a] state-law tortious interference claim; without it, the claim is preempted by patent law."). "Accordingly, to avoid preemption, 'bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.'" Globetrotter, 362 F.3d at 1374 (quoting Zenith, 182 F.3d at 1355).³ Likewise, "before a patentee may be held liable under § 43(a) [of the Lanham Act] for marketplace activity in support of its patent, and thus be deprived of the right to make statements about the potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." Zenith, F.3d at 1353. This bad faith requirement "is in addition to the elements required by § 43(a) itself." Id. (citations omitted).⁴

---

³ Under Texas law, the elements of a claim for tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the claimant's damages; and (4) actual damage or loss. See Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex. 1996).

⁴ The elements of a § 43(a) claim are: (1) that the defendant has made a false or misleading statement concerning his product or another's; (2) that the statement actually or tends to deceive a substantial portion of the intended audience; (3) that the

To satisfy the "bad faith" standard, a plaintiff must establish that the patent holder's assertions of infringement were "objectively baseless." *See* Globetrotter, 362 F.3d at 1375-77 ("A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims are objectively baseless."). A claim is "objectively baseless" only if "no reasonable litigant could realistically expect success on the merits." Id. at 1376 (quoting Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 113 S. Ct. 1920, 1928 (1993)). While "[e]xactly what constitutes bad faith [is] to be determined on a case by case basis," where a "patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representation is made out." Zenith, 182 F.3d at 1354.

In Count II of its counterclaim, Micro-Waste alleges that Industries tortiously interfered with Micro-Waste's contractual relationship with one of its customers, the Harris County Hospital District ("HCHD"), by providing the HCHD with "a substantially equivalent copy of the complaint" filed in this lawsuit and

---

statement is material in that it is likely to influence purchasing decisions; (4) that the defendant caused the statement to enter interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc. *See* Logan v. Burgers Ozark Country Cured Hams, Inc., 263 F.3d 447, 462 (5th Cir. 2001).

informing it that "Micro-Waste cannot make, use or sell any products embodying the Technology." Id. ¶¶ 120, 126-27. In Count III, Micro-Waste alleges that Industries's communications to the HCHD violate § 43(a) of the Lanham Act because Industries falsely represented that Micro-Waste had no authority to sell products embodying the Technology and its related marks when in fact Micro-Waste "has been the only authorized distributor, under the mark SANITEC, of products embodying the Technology" and "has had a license and authority to utilize the term 'SANITEC' and related marks since 1989." Id. ¶¶ 130-31. However, nowhere in its counterclaim does Micro-Waste expressly allege that Industries acted in bad faith in its communications to the HCHD or that these communications were otherwise objectively baseless. *See* id. ¶¶ 89-141.

In response to Industries's motion to dismiss, Micro-Waste contends that its tortious interference claim "survives federal preemption because such claim is plead and based upon a showing of Industries' 'bad faith' in asserting its infringement action against Micro-Waste." Document No. 16 at 6. Micro-Waste further argues that it "sufficiently pleads Industries' 'bad faith' in the marketplace by falsely making representations of patent infringement and falsely stating to Micro-Waste's customer that Micro-Waste has no lawful right to use the SANITEC mark or distribute and sell the Technology," and that "these allegations of

8

Industries' marketplace misconduct allow and support Micro-Waste's Lanham Act claim." Id. at 10.

Even taking all of the allegations in Micro-Waste's counter-complaint as true, the fact that Industries provided the HCHD with "a substantially equivalent copy of the complaint" and informed it that "Micro-Waste cannot make, use or sell any products embodying the Technology," does not, without more, allege bad faith. Micro-Waste does not allege that Industries provided the HCHD with "a substantially equivalent copy of the complaint" despite *knowing* the contents of the complaint to be false. Nor does Micro-Waste allege that, at the time Industries made its communications to the HCHD, Industries (1) knew that the '000 patent was invalid; (2) knew that the patent applicant had engaged in inequitable conduct before the PTO, and therefore knew that the '000 patent was unenforceable; or (3) knew that Micro-Waste had a valid license to sell products embodying the Technology and use the related marks, and therefore knew that Micro-Waste had not infringed the '000 patent. In sum, Micro-Waste fails to set forth any facts from which it could be inferred that Industries when it informed the HCHD of the instant lawsuit had knowledge that the '000 patent was invalid, unenforceable, or not infringed, and therefore knowledge that its assertion of infringement was objectively baseless. Micro-Waste has not alleged tortious interference or Lanham Act claims that are not preempted on their face by federal patent law.

B.     Declaratory Judgment Counterclaim

    1.     Inequitable Conduct Claim

Micro-Waste in its Count IV seeks a declaratory judgment that the '000 Patent is non-enforceable due to inequitable conduct before the PTO. Document No. 7 ¶ 138. Specifically, Micro-Waste alleges that "the patent applicant, and those substantially involved in the prosecution, withheld material information from and made material misrepresentations to the Patent Examiner(s) in relation to the prior art known to the patent applicant, including but not limited to, the characteristics, public use and display of the Technology in Germany and elsewhere at least as early as 1986," and that the information allegedly withheld "was material information within the meaning of 37 C.F.R. § 1.56. . . ." Id.[5] Industries moves to dismiss this portion of Count IV, arguing that: (1) Micro-Waste fails to state a claim for inequitable conduct because Micro-Waste has not alleged that the patent applicant acted with an intent to deceive or mislead the PTO, and/or (2) Micro-Waste's allegations of inequitable conduct contain insufficient factual support to satisfy the particularity requirement of Rule 9(b).

---

[5] The '000 Patent was issued to "Goldner, et al." on December 14, 1993. Document No. 1 ex. 1. Its subsequent history, including Industries's acquisition of the '000 Patent and related trademarks, is set forth in Industries's Complaint. See Document No. 1 ¶¶ 11-25.

"Applicants for patents are required to prosecute patent applications in the PTO with candor, good faith, and honesty," and "[a] breach of this duty constitutes inequitable conduct" rendering the patent unenforceable. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995). One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of (1) the existence of material prior art, (2) knowledge chargeable to the applicant of that prior art and of its materiality, and (3) the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO. Id.

Industries first argues that "Micro-Waste nowhere alleges that the applicants or anyone involved in the prosecution of the application leading to the '000 patent acted with any intent to deceive or mislead the PTO," and Micro-Waste's inequitable conduct claim should therefore be dismissed for failure to state a claim. Document No. 11 at 10. Although Micro-Waste does not expressly allege an intent to deceive or mislead, Micro-Waste does allege that the patent applicant had knowledge of material prior art, including the characteristics, public use and display of the Technology in Germany, but withheld that information from the PTO. Thus, Micro-Waste has adequately pled facts from which an intent to deceive or mislead may be inferred.

Industries next asserts that Micro-Waste's allegations of inequitable conduct contain insufficient factual support to satisfy

11

the particularity requirement of Rule 9(b). Although the Federal Circuit has not squarely addressed whether Rule 9(b) applies to claims of inequitable conduct, courts usually require that claims of inequitable conduct involving fraudulent conduct before the PTO, like other allegations of fraud, be pled with particularity as required by Rule 9(b). *See*, *e.g.*, Rentrop v. The Spectranetics Corp., 2004 WL 1243608, at *1-2 (S.D.N.Y. June 4, 2004) (listing cases); Samsung Elecs. Co., Ltd. v. Tex. Instruments, Inc., 1996 WL 343330, at *2-3 (N.D. Tex. Apr. 18, 1996) (same); *see also* Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity."). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b). Thus, Micro-Waste must allege the facts giving rise to its claim of inequitable conduct before the PTO, including the time, place and content of the alleged misrepresentations and omissions, as well as the identity of the person making the misrepresentations. *Cf.* Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992).

Micro-Waste's allegations of inequitable conduct fail to satisfy the particularity requirement of Rule 9(b). Micro-Waste

pleads the time and place of the alleged inequitable conduct ("[d]uring the prosecution of the '000 patent") and the content of the alleged misrepresentations and omissions (the characteristics, public use and display of the Technology in Germany), but Micro-Waste fails to identify any specific person who engaged in the alleged inequitable conduct. *See* Document No. 7 ¶ 138. Although Micro-Waste attributes the alleged inequitable conduct to "the patent applicant, and those substantially involved in the prosecution," Micro-Waste's counter-complaint does not identify any individual or individuals as being either the applicant or "those [who were] substantially involved in the prosecution" of the '000 patent. *Compare* MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762, 772 (D. Md. 2003) ("MedImmune's specification that the "Applicants" are responsible for the inequitable conduct satisfies the identity requirement because MedImmune states the names of the patent applicants in Paragraph 12 of the Amended Complaint."). Micro-Waste's allegations of inequitable conduct do not satisfy Rule 9(b).

    2.    <u>Sherman Act Violation</u>

Micro-Waste also alleges that Industries's "efforts to enforce the '000 patent against Micro-Waste either through a requirement to pay royalties under the Micro-Waste License or by cancelling the Micro-Waste License and charging Micro-Waste with infringement of

the '000 patent is a misuse of the '000 patent and a violation of Section 2 of the Sherman Antitrust Laws" because Industries "knew or should have known that the '000 patent was invalid, *ab initio*." Document No. 7 ¶ 141.  Industries argues that these allegations fail to state a claim under § 2 of the Sherman Act and fail to overcome Industries's Noerr-Pennington immunity.  *See* Document No. 11 at 12-13.

To sustain a claim for violation of § 2 of the Sherman Act, the plaintiff must prove that: (1) the defendant engaged in predatory or exclusionary conduct; (2) the defendant possessed a specific intent to monopolize the relevant market; and (3) there was a dangerous probability of that the defendant would successfully attain monopoly power.  *See* Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish, 309 F.3d 836, 839 (5th Cir. 2002) (citations omitted).  In addition, to overcome the Noerr-Pennington doctrine, which immunizes a patent holder from Sherman Act liability for bringing a good faith lawsuit to enforce its patent rights, the plaintiff must prove (1) that the patent holder brought the patent enforcement action with knowledge that its patent is invalid or was not infringed, and (2) that the litigation is conducted for anti-competitive purposes.  *See* C.R. Bard, Inc., v. M3 Sys., Inc., 157 F.3d 1340, 1368 (Fed. Cir. 1998).

In the single paragraph of its counter-complaint referring to the Sherman Act, Micro-Waste pleads neither the elements of a § 2

14

claim nor any facts that might correspond to those elements. *See* Document No. 7 ¶ 141. Moreover, although Micro-Waste has alleged that Industries "knew or should have known that the '000 patent was invalid" yet "charg[ed] Micro-Waste with infringement of the '000 patent," Micro-Waste alleges no facts giving rise to an inference that Micro-Waste instituted the lawsuit for anti-competitive purposes. Id. Thus, Count IV of Micro-Waste's counter-claim fails to state a viable claim under § 2 of the Sherman Act.[6]

## IV. Order

Based on the foregoing, it is

ORDERED that Plaintiff/Counterclaim Defendant Sanitec Industries Inc.'s Motion to Dismiss Counts II-IV of Micro-Waste's Counterclaim (Document No. 11) is GRANTED, and Counts II, III, and those portions of IV that allege inequitable conduct before the PTO and a violation of § 2 of the Sherman Act are DISMISSED, but without prejudice to Micro-Waste within 14 days after the entry of

---

[6] Micro-Waste argues that it "sufficiently alleges its antitrust claim against Industries" because "Industries has engaged in predatory or exclusionary conduct by filing this patent infringement claim against Micro-Waste in an attempt to exclude and prohibit Micro-Waste from selling the Technology," and "[i]n instituting this lawsuit, Industries seeks to monopolize the relevant market for the Technology and would achieve such monopoly power if successful." *See* Document No. 16 at 13. These allegations, however, do not appear in Micro-Waste's counter-complaint.

this Order filing an Amended Counterclaim in which Counts II, III, and IV only may be repled.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 15th day of June, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE