O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANITEC INDUSTRIES INC., | § | |
| | § | |
| Plaintiff/ | § | |
| Counterclaim Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3066 |
| | § | |
| MICRO-WASTE CORPORATION, | § | |
| | § | |
| Defendant/ | § | |
| Counterclaim Plaintiff. | § | |

MEMORANDUM AND ORDER

The background for this suit and identities of the parties may be found in the Court's Memorandum and Order entered June 15, 2005. Now pending is Defendant/Counterclaim Plaintiff Micro-Waste Corporation's Motion to Withdraw Admissions (Document No. 38) and Plaintiff/Counterclaim Defendant Sanitec Industries, Inc.'s Motion to Strike Micro-Waste's Reply (Document No. 61). After having reviewed the motions, response, reply, and the applicable law, the Court concludes that the motions should be denied.[1]

Industries's Complaint, filed July 30, 2004, was served upon Micro-Waste, along with a summons, on August 31, 2004. The six-count Complaint alleged most prominently, in Count 1, "Patent

---

[1] Industries's motion to strike Micro-Waste's reply in support of Micro-Waste's Motion to Withdraw Admissions is based on the grounds that "[t]he Local Rules of this Court do not provide for a reply memorandum," and "Micro-Waste submitted its reply without first seeking leave to do so." *See* Document No. 61 ¶¶ 2-4. Industries's motion to strike is DENIED.

Infringement" by Micro-Waste in making, selling or offering to sell products embodying Plaintiff's '000 Patent, products that infringed "one or more claims of the '000 Patent," and that "Micro-Waste's infringement has been willful." In paragraph 39 of its Complaint, Industries specifically alleged that the "product offered by Micro-Waste to the Harris County Hospital District would fall within the scope of one or more claims of the '000 Patent." This allegation was central to Plaintiff's patent infringement lawsuit from the beginning.

At the end of September, 2004, Micro-Waste filed its responsive Answer in which it, in reply to paragraph 39 of the Complaint, specifically denied "that the product offered by Micro-Waste to the Harris County Hospital District" falls within the scope of any valid and enforceable claim of the '000 Patent. In response to Count One--the patent infringement count--Defendant specifically denied "that it made, used, sold, and/or offered for sale products embodying the patented invention including without limitation, an offer for sale and sale to the Harris County Hospital District, Texas, that infringe any valid and enforceable claim of the '000 Patent."

In November, 2004, Industries served Micro-Waste with its requests for admissions, which were obviously intended to clarify any ambiguities in Micro-Waste's Answer and narrow the issues to be tried. Enlargements of time were agreed upon by the parties and

approved by the Court, postponing the date for Micro-Waste to respond to Industries's written discovery requests. Thus, it was not until February 25, 2005, approximately three months after having been served with the requests for admissions, that Micro-Waste responded to requests nos. 1 and 2, as follows:

> **REQUEST NO. 1:** Assuming arguendo that the '000 patent is valid and enforceable, admit that the Accused Products are within the scope of one or more claims of the '000 patent.
>
> **RESPONSE:** Micro-Waste denies that the '000 patent is valid and enforceable. Micro-Waste admits that the Accused Products are within the scope of the '000 patent.
>
> **REQUEST NO. 2:** Assuming arguendo that the '000 patent is valid and enforceable, admit that the MDU offered for sale and/or sold to Harris County by Micro-Waste is within the scope of one or more claims of the '000 patent.
>
> **RESPONSE:** Micro-Waste denies that the '000 patent is valid and enforceable. Micro-Waste admits that the MDU offered for sale, and/or sold to Harris County by Micro-Waste is within the scope of one or more claims of the '000 patent.

*See* Document No. 48 ex. 6.[2] These admissions of fact were filed by Micro-Waste after they had been reviewed by Micro-Waste's President Mr. Robert A. Bollinger ("Bollinger").

On April 12, 2005, Industries took Bollinger's deposition. Bollinger confirmed that he reviewed the responses to the requests

---

[2] The terms "Accused Products" and "MDU" are defined to "mean and refer to a machine and/or system for disinfecting medical waste that is manufactured, made for, distributed and/or sold by Micro-Waste. . . ." Document No. 48 exs. 2 at 3; 5 at 1.

for admission before they were submitted to Industries and that the responses were accurate.  Id. ex. 4 at 70.  However, when Industries asked Bollinger whether claim 1 of the '000 Patent described the machine sold by Sanitec and whether claim 18 of the '000 Patent described the process used by the machine sold by Micro-Waste, Bollinger responded that they did not.  Document No. 60 ex. 1 at 63-64, 67-68.  Despite Bollinger's testimony, which Micro-Waste asserts first alerted it to possible error in its admissions, Micro-Waste did not seek promptly to amend or withdraw its admissions nos. 1 and 2.  Instead, Micro-Waste delayed another two months, until the discovery cut-off date itself, before moving to withdraw those admissions.

Lawsuits essentially involve a search for the truth and, ideally, should be decided upon facts that are admitted by the parties or, if not admitted, which are proven at trial.  Where a party mistakenly admits to a fact, discovers its error, and moves to withdraw or amend that admission, the withdrawal or amendment may be permitted to subserve the presentation of the merits of the case so long as that withdrawal or amendment will not prejudice the party who obtained the admission in maintaining its action or defense on the merits.  See FED. R. CIV. P. 36; In re Carney, 258 F.3d 415, 419 (5th Cir. 2001).  Permitting the correction of a mistaken admission is thus weighed in the balance with the avoidance of prejudice to the opposing party who has relied on that

admission.  And underlying that rule, of course, is the principle that the administration of justice should be efficient, timely, and well ordered, and that parties should prosecute and defend lawsuits with reasonable diligence and care.  Thus, for example, in filing a written pleading, motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the allegations and denials of factual contentions are supported or warranted by the evidence.  *See* FED. R. CIV. P. 11(b).

In support of its motion to withdraw, Micro-Waste states that it "originally believed the '000 Patent was valid and Micro-Waste was operating under a valid license agreement for a patented product from Industries' predecessor in interest," a belief "based upon representations made by Industries' predecessors in interest to the Technology" beginning as early as January 1990.  Document No. 60 ¶ 15.  Micro-Waste explains that it "had no reason to believe the representations and information were not factual; therefore, Micro-Waste did not perform a claims analysis prior to or in the early stages of this lawsuit."  Id.  According to Micro-Waste, "[i]t was not until Mr. Bollinger's deposition testimony when he was examined by Industries' counsel about the patent language and his knowledge of the Accused Products that it began to become apparent the Sanitec machines manufactured by the

predecessor in interest of the '000 Patent and the machine manufactured by Micro-Waste were not in the scope of the '000 Patent." Id. ¶ 19. Micro-Waste states that "[t]his issue became more evident after further depositions in June 2005 of other witnesses with first-hand knowledge of how the Sanitec Systems manufactured by Industries' predecessors did not fall within the scope of the claims." Id.

Micro-Waste contends that allowing it to withdraw its admissions would serve the presentation of the case on its merits because "[a]llowing Industries to use admissions which have been found to be incorrect would essentially eliminate any presentation of Micro-Waste's non-infringement defense." Id. ¶ 14. Micro-Waste further argues that Industries will not be prejudiced by the withdrawal of the admissions because (1) Sanitec has already deposed Bollinger, who testified that Micro-Waste's machines do not are not the machines described in claims 1 and 18 of the '000 Patent; (2) the admissions are not the type of admissions around which significant discovery would be conducted; and (3) trial remains many months away. See Document No. 38 ¶¶ 18-19. Micro-Waste also states that it will "fully accommodate reasonable further discovery . . . on this limited issue" and points out that because the dispositive motion deadline has been extended to September 9, 2005, Industries will have "the full opportunity to pursue its infringement claim by such a motion." Document No. 61 ¶ 33.

Industries contends that it would be inappropriate to permit Micro-Waste to withdraw its admissions because Micro-Waste did not demonstrate due diligence during discovery in uncovering the facts upon which it now seeks to rely.  *See* Document No. 48 at 7-12. Industries notes that Micro-Waste relies on the testimony of its own Rule 30(b)(6) corporate designee and two non-expert fact witnesses from whom Micro-Waste had obtained affidavits in October and December 2004 and argues that if these witnesses "had information or opinions that affected Micro-Waste's determination of whether [its products] fell within the scope of the claims of the '000 patent, Micro-Waste had access to this information well before it chose to admit infringement."  Id. at 11.  In other words, Micro-Waste had access to all information it needed to evaluate whether its products fell within the scope of the '000 Patent well before it admitted infringement.  Id.  Industries further contends that withdrawal of the admissions will disrupt the orderly disposition of this case because Micro-Waste's admissions are "precisely the type of admissions around which significant discovery would be conducted," given that a comparison of the accused products to the patent claims is a question of fact.  Id. at 17.

Finally, Industries argues that it will be unfairly prejudiced if the admissions are withdrawn because it will face a "sudden need to obtain evidence," namely facts to support its claim of

infringement.[3]  Industries states that in reliance on Micro-Waste's admissions of infringement, Industries "properly focused its available energy, time, and expense on the other issues in this case."  Id. at 20.  Industries also points out that fact discovery is now closed and argues that the case will be delayed if the admissions are withdrawn.  Id. at 20-21.  Alternatively, Industries argues that withdrawal of Micro-Waste's admissions would be futile because Micro-Waste is estopped from asserting that the MDU it sold to Harris County is not covered by the '000 Patent, given that Micro-Waste marked that unit with the '000 Patent after this lawsuit was filed.  Id. at 22-23.

Whether the products being manufactured and sold or offered for sale by Micro-Waste are within the scope of one or more claims of the '000 Patent has from the beginning been a central fact issue on the primary claim made by Industries against Micro-Waste, namely, patent infringement.  Micro-Waste's admissions, therefore, are not minor in nature or collateral to other principal issues.  They are critical to the case itself.

Micro-Waste had all the information it needed to determine whether it sold or offered for sale products embodying the patented invention or products that infringed any valid or enforceable claim

---

[3] "Courts have usually found that the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal of amendment of an admission."  Am. Auto. Ass'n v. AAA Legal Clinic, 930 F.2d 1117, 1120 (5th Cir. 1991).

of the '000 Patent long before it made its admissions.  Indeed, if there were any fact that Micro-Waste should have been expected diligently to investigate and answer in this patent infringement case, it was that issue.  When asked to make an assumption that the patent itself was valid and enforceable, Micro-Waste well knew and understood that the admission being sought was solely whether its products were within the scope of the '000 Patent or within the scope of one or more claims of the '000 Patent.  On these questions, one must assume that Micro-Waste would exercise the utmost care before admitting to those facts as Micro-Waste did. The patent infringement claim, after all, had been pending for half a year before Micro-Waste made and filed these critical admissions of fact.

Permitting withdrawal of the admissions at this stage would unfairly prejudice Industries in the presentation of its case.  The burden of proof to show prejudice is on Industries, and Industries has well satisfied the Court that withdrawal of admissions nos. 1 and 2 would severely prejudice Industries in maintaining its action on the merits.  Micro-Waste waited until the discovery cut-off date before it ever moved to withdraw its admissions nos. 1 and 2. Thus, the fact is that Industries has now relied upon these admissions for over half a year and has not undertaken to prepare evidence critical to presenting a case in which it is contested that Micro-Waste's products are within the scope of the '000

9

Patent. Because fact discovery has ended, Industries is left with no opportunity to conduct additional discovery in support of its claims of infringement under the scheduling and docket control order put into place almost a year ago. The alternative is to reopen pretrial discovery, which on an issue so central to the case from the day it was filed would be almost like starting everything all over again.[4] This is not acceptable. The responsibility for this predicament lays squarely on the shoulders of Micro-Waste, which had six months after being served with the patent infringement claim to investigate the facts, and three months after being served with the requests for admissions in which carefully to consider and answer accurately admissions nos. 1 and 2. Then, even though it claims to have been alerted by mid-April, 2005 to possible error in its admissions, Micro-Waste waited another two months--until the lights were turned out on pretrial discovery on June 15, 2005--before filing its motion to withdraw the admissions. For the foregoing reasons, Micro-Waste's belated motion to withdraw its admissions nos. 1 and 2 must be denied.

---

[4] It is not as if this were one minor issue embedded and obscured among other "big" issues and could therefore understandably escape a litigant's attention. To the contrary, the "Patent Infringement" claim, as already observed, was <u>Count 1</u> of the Complaint, and the requests to admit that Micro-Waste's products fell within the scope of the '000 Patent were Requests <u>No. 1</u> and <u>No. 2</u>. In other words, this issue was the first focus of both Industries's Complaint and its written discovery.

Accordingly, it is

ORDERED that Defendant/Counterclaim Plaintiff Micro-Waste Corporation's Motion to Withdraw Admissions (Document No. 38) is DENIED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 8th day of September, 2005.

```
                        _____
                              EWING WERLEIN, JR.
                           UNITED STATES DISTRICT JUDGE
```