```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

SANITEC INDUSTRIES INC.,       §
                               §
     Plaintiff/                §
     Counterclaim Defendant,   §
                               §
v.                             §    CIVIL ACTION NO. H-04-3066
                               §
MICRO-WASTE CORPORATION,       §
                               §
     Defendant/                §
     Counterclaim Plaintiff.   §
```

MEMORANDUM AND ORDER

Pending are Micro-Waste Corporation's Motion to Strike and Exclude Plaintiff's Expert Witness (Document No. 76), Motion for Summary Judgment (Document No. 78), and Motion to Strike Plaintiff's Supplemental Memorandum in Support of Industries' Motion for Summary Judgment (Document No. 137); and Sanitec Industries Inc.'s Motion for Summary Judgment (Document No. 82). After having carefully considered the motions, responses, replies, and the applicable law, the Court concludes as follows:

I. Background

The background for this suit and identities of the parties may be found in the Court's Memorandum and Order entered June 15, 2005 (Document No. 39) and Memorandum and Order entered September 8, 2005 (Document No. 73). Industries is the current owner of United

States Patent No. 5,270,000 (the "'000 patent"), entitled "Apparatus and Process for Treating Medical Hazardous Wastes." Document No. 84 ex. 1.[1] The technology covered by the '000 patent (the "Technology") pertains to a device, often called a "microwave disinfection unit" or "MDU," and process that uses microwaves to disinfect and sterilize medical hazardous wastes in an economical and environmentally friendly manner. Id. Industries alleges that Micro-Waste has infringed the '000 patent and Industries' trademarks, committed fraud and conversion, and violated the Lanham Act and Texas unfair competition laws.

Remaining in this lawsuit are the following claims: (1) Industries' claims of patent infringement, Lanham Act violations, unfair competition, fraud, and conversion; (2) Micro-Waste's counterclaim for a declaratory judgment that the '000 patent is invalid, unenforceable, and/or not infringed; and

---

[1] According to Industries, the family tree of the '000 patent begins with German patent application No. DE 3912751, filed on April 19, 1989 (the "German priority date"). *See* Document No. 84 exs. 2-3, 78 ¶ 6, 9. On April 16, 1990, international application No. PCT/US90/02043 (the "PCT application") was filed under the Patent Cooperation Treaty (the "PCT") and claimed priority to DE 3912751. Id. exs. 2, 4. Approximately 17 months later, on September 27, 1991, the applicants' attorney requested that PCT/US90/02043 be entered into the national stage, and after processing, it was assigned application Serial No. 07/768,870 (the "'870 application") on October 31, 1991. Id. ex. 2. The '870 application issued to "Goldner, et al." as the '000 patent on December 14, 1993. Id. ex. 1. The subsequent ownership history of the '000 patent, including Industries' acquisition of the '000 Patent and the related trademarks, is set forth in Industries' Complaint. *See* Document No. 1 ¶¶ 11-25.

2

(3) Micro-Waste's amended counterclaims of tortious interference with contract, Lanham Act violations, and breach of contract. Both parties have filed motions for summary judgment related to Industries' patent infringement claim and Micro-Waste's defenses thereto; Industries has moved for summary judgment on Micro-Waste's amended business tort and contract counterclaims; and Micro-Waste has filed a motion to strike Industries' expert witnesses Edward P. Krisiunas ("Krisiunas") and Harry F. Manbeck, Jr. ("Manbeck") and preclude them from testifying at trial and a motion to strike Industries' supplemental brief in support of its motion for summary judgment.

## II.  Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th

Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III.  Discussion

A.  Motion to Exclude Industries' Experts

Micro-Waste first moves to strike the expert statement and exclude the expert testimony of Krisiunas, principally on the topic of patent infringement, on the grounds that (1) he lacks the qualifications to testify both as to the law of patents and as to the design of medical waste disposal systems; (2) his testimony is not reliable; and (3) his expert report does not provide a complete statement of all opinions he will present, nor does it provide the basis for the opinions he does present.  In response, Industries states that the Court's "decision to deny Micro-Waste's motion to withdraw its admission of infringement means that no testimony from Krisiunas on the subject of infringement will be necessary."  Document No. 102 at 8.  The latter representation by Industries renders moot the bulk of Micro-Waste's objection that Krisiunas is not qualified to testify on whether Micro-Waste's microwave disinfection unit infringes the '000 patent, that his testimony in this regard is unreliable, and/or that his expert statement fails adequately to disclose the basis for his opinions regarding infringement.  Krisiunas will therefore not be allowed to testify to opinions expressed in paragraphs 11-17 of his statement.  The fact that he wrote these paragraphs in conjunction with Industries' lawyers is just one further reason to exclude the opinions.

5

To the extent Krisiunas is called to testify generally about the Technology--how it works, its benefits, etc.--the motion to strike will be denied.  Although Krisiunas is not an engineer, he holds a Bachelor of Science degree in Medical Technology and a Master of Public Health degree; has authored or coauthored numerous articles, papers, reports, and books on the subject of medical waste management, including ones relating to the technology at issue in this case; has "been involved in the medical waste disposal industry for over 16 years," during which he has "been involved with numerous technologies," foremost among those being the Technology; has "operated the Sanitec units," "been inside of the Sanitec units," "taken them apart," and "been involved in microbiological testing"; and has inspected the accused product that Micro-Waste sold to the Harris County Hospital District ("HCHD").  *See* Document No. 76 ex. 1 ¶¶ 1-3, 5; ex. 3 at 10-16, 18, 30-31, 260.  Krisiunas is therefore qualified by virtue of his knowledge, skill, experience, training, and education to testify on the subject of medical waste treatment equipment, including the Technology.  *See* FED. R. EVID. 702.  Any opinion testimony, of course, must have been set out in his report, together with the basis for such, in accordance with the Docket Control Order signed November 19, 2004.  Micro-Waste's motion to strike this aspect of Krisiunas's testimony will be denied.

Micro-Waste also moves partially to exclude the testimony of Manbeck, arguing that (1) he fails to provide a complete statement of all opinions to be expressed, and (2) his expert statement is tentative, inadequate, and incomplete. Specifically, Micro-Waste challenges paragraphs 5-7, 9-13, 16, and 22-23 of Manbeck's expert statement, complaining that "Manbeck refers only to what he 'expect[s] to describe,' what '[t]he testimony is expected to include,' and what he 'expect[s] to explain,' rather than providing a complete statement of the opinions to be expressed and the basis for them." Document No. 76 ¶ 28.

In paragraphs 5-7 and 9-13 of his expert statement, Manbeck--a patent attorney with more than 35 years of experience and a former Commissioner of the Patent and Trademark Office--explains that he will testify, "to the extent necessary for an understanding of the issues presented," generally about patent procedures and patent law concepts. *See* Document No. 76 ex. 2 ¶¶ 5-7, 9-13. Because Manbeck does not offer in these paragraphs opinions for which he would be required to provide the basis and reasons, but rather proposes to provide factual or background testimony in areas in which he has extensive experience and expertise, Micro-Waste's objection to paragraphs 5-7 and 9-13 is without merit. In paragraph 16, Manbeck proposes "to explain the basis on which the '000 patent claims priority from the original German patent, so as to be entitled to the April 19, 1989 German priority date," and contrary to Micro-

Waste's assertion, Manbeck provides a detailed factual basis for this opinion in the paragraphs that follow. Id. ¶ 16.  Finally, in paragraphs 22 and 23, Manbeck proposes, "if necessary," to "explain the PTO records that establish title of the '000 patent" in Industries. Id. ¶ 22-23.  Manbeck adequately discloses his opinion --that Industries is the current assignee of the '000 patent--and the basis for that opinion--the relevant PTO records and the statutory requirement that patent assignments be in writing. Therefore, Micro-Waste's motion to strike paragraphs 5-7, 9-13, 16, and 22-23 of Manbeck's expert statement for inadequacy and incompleteness will be denied.

B.  **The Motions for Summary Judgment: Plaintiff's Patent Infringement Claim**

In Count One of its Complaint, Industries alleges that "Micro-Waste has made, used, sold, and/or offered for sale products embodying the [Technology], including without limitation, an offer for sale and sale to the Harris County Hospital District, Texas, thereby infringing one or more claims of the '000 patent." Document No. 1 ¶ 43.  In response, Micro-Waste asserts several affirmative defenses, including (1) the license defense; (2) the invalidity defense; and (3) the inequitable conduct defense.  *See* Document No. 46 ¶¶ 76, 81-82.  Micro-Waste also asserts a counterclaim for a declaratory judgment that the '000 patent is invalid, unenforceable, and/or not infringed.  Id. ¶¶ 170-79.

Industries seeks summary judgment that Micro-Waste's products infringe the '000 patent, while Micro-Waste seeks summary judgment that its products do not infringe the '000 patent.  In addition, Industries moves for summary judgment on Micro-Waste's license and inequitable conduct defenses, and both Industries and Micro-Waste move for summary judgment on Micro-Waste's invalidity defense. Each of these issues will be addressed in turn.

1.   Infringement of the '000 Patent

Both Industries and Micro-Waste move for summary judgment on the issue of infringement.  Determining whether a patent has been infringed "is a two-step process: 'First, the court determines the scope and meaning of the patent claims asserted . . . [and second,] the properly construed claims are compared to the allegedly infringing device.'"  Lava Trading, Inc. v. Sonic Trading Mgmt., LLC, 445 F.3d 1348, 1352 (Fed. Cir. 2006) (quoting Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted)).  Industries argues that "[h]ere, the Court's task is simpler because Micro-Waste's own responses to requests for admissions and interrogatory responses expressly admit that the [MDUs] offered for sale and sold to HCHD are within the scope of the claims of the '000 patent, and thus infringe that patent." Document No. 83 at 2 (citing Document No. 84 ex. 8 ¶ 8 & Interrog. No. 2, ex. 9 (Resp. to Interrog. No. 2), ex. 12 (Request for

Admission Nos. 1-2), ex. 13 (Response Nos. 1-2)). "[B]ased on Micro-Waste's own discovery responses, the accused product is within the scope of one or more claims of the '000 patent," and hence, Industries argues, "partial summary judgment of infringement is proper." Document No. 83 at 3.

In response, Micro-Waste argues that it has never admitted that the Accused Device infringes a specific claim of the '000 patent and that the Accused Device does not in fact have each and every element of either independent claim of the '000 patent--i.e., claim 1 or claim 18. See Document No. 108 at 2-5, 7-8.[2] Micro-Waste states that "nowhere in [Industries'] Request for Admissions did Industries seek an admission regarding a specific claim or a specific claim element," and that "Micro-Waste has never admitted that it specifically infringes Claim 1 or Claim 18." Id. at 7. Thus, Micro-Waste argues, because "a specific claim must be infringed," and because Industries has failed to prove that the Accused Device contains each and every element of either claim 1 or claim 18 of the '000 patent, Industries is not entitled to a summary judgment of infringement. Id. at 2, 8. At the very least, Micro-Waste argues, "Micro-Waste's evidence that it does not infringe Claims 1 or 18, including expert witnesses in support

---

[2] In its motion for summary judgment, Micro-Waste offers its analysis of claims 1 and 18 of the '000 patent and argues that the Accused Device is missing one or more elements of those claims. See Document No. 79 at 20-25; ex. 24.

thereof, is sufficient evidence to create a fact issue as to whether Claim 1 or Claim 18 or both are infringed by the Accused Device," foreclosing Industries' motion for summary judgment. Id. at 8.

"[A] patent is infringed if any claim is infringed, . . . for each claim is a separate statement of the patented invention." Pall Corp. v. Micron Separations, 66 F.3d 1211, 1220 (Fed. Cir. 1995); *see also* CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1236 (Fed. Cir. 2005) ("[I]nfringement of even a single claim entitles a patentee to damages."). Thus, Micro-Waste's admissions that its product is "within the scope of the '000 patent" and "is within the scope of one or more claims of the '000 patent" conclusively establish infringement, notwithstanding Micro-Waste's objection that it did not admit the specific claim(s) of the '000 patent that its product infringes.

As Industries correctly points out, Micro-Waste is bound by its admissions that its products are within the scope of the '000 Patent and within the scope of one or more claims of the '000 Patent. *See* Document No. 73. Micro-Waste is therefore precluded from asserting that a triable issue of fact remains on whether Micro-Waste's products are within the scope of the '000 patent. *See* FED. R. CIV. P. 36(b) ("Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits the withdrawal or amendment of the admission."); *see*

11

*also* Dukes v. S.C. Ins. Co., 770 F.2d 545, 549 (5th Cir. 1985) (holding that because the plaintiffs' deemed admissions established that they had misrepresented the age of a trailer, "no genuine issue remained as to this fact" and summary judgment was appropriate); Am. Auto. Ass'n v. AAA Legal Clinic, 930 F.2d 1117, 1120 (5th Cir. 1991) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."); In re Carney, 258 F.3d 415, 420 (5th Cir. 2001) ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.").  Because Micro-Waste's admissions conclusively establish that its products are within the scope of the '000 Patent and within the scope of one or more claims of the '000 Patent, no reasonable jury could answer the ultimate issue of infringement in Micro-Waste's favor.  Industries is therefore entitled to summary judgment that Micro-Waste infringed its '000 patent, providing, of course, that Micro-Waste is not successful in establishing one or more of its affirmative defenses.

2.  <u>Micro-Waste's Defenses</u>

Micro-Waste asserts as affirmative defenses (1) that it had "the right to make, use and sell the products embodying the Technology and to use the [associated] trademarks" under a License Agreement between Micro-Waste and Industries' predecessor, Sanitec Group, LLC ("Group"); (2) that claims 1 and 18 of the '000 patent are invalid as anticipated by prior printed publications and/or prior offers for sale; and (3) that the '000 Patent is not enforceable because the patent applicants "withheld material information from and made material misrepresentations to the Patent Examiner(s)" regarding "the commercial use, public display, [and] public promotion of the [Sanitec] Technology MDU's in Germany and elsewhere at least as early as 1986"--that is, engaged in inequitable conduct before the United States Patent & Trademark Office.  Industries moves for summary judgment on each of these defenses, arguing that the License Agreement is voidable because Micro-Waste procured it by fraud and that Micro-Waste's invalidity and inequitable conduct defenses are not supported by clear and convincing evidence; and Micro-Waste moves for summary judgment in its favor on its invalidity defense.

After having carefully considered the motions, responses, reply, and the applicable law, the Court finds that genuine issues of material fact preclude summary judgment on these defenses, two

of which defenses are inexorably intertwined both factually and legally.

C.   Micro-Waste's Amended Tortious Interference with Contractual Relations and Lanham Act Counterclaims

Industries also moves for summary judgment on Micro-Waste's amended tortious interference and Lanham Act counterclaims, which were repled by Micro-Waste after the Court's Order entered June 15, 2005.[3]  Although Micro-Waste's theory in support of these claims has changed from time to time throughout this lawsuit, Micro-Waste presently alleges that Industries (1) tortiously interfered with Micro-Waste's contractual relations by "fail[ing] to respond to numerous requests from Micro-Waste as to Industries' position regarding the License Agreement until immediately before delivery of the HCHD unit";[4] and (2) violated the Lanham Act by sending a

---

[3] Although Industries requests in its reply brief that summary judgment be entered in its favor on Micro-Waste's breach of contract counterclaim, *see* Document No. 111 at 25, Industries did not move for summary judgment on that counterclaim and the request is denied.

[4] To the extent Micro-Waste has also premised its tortious interference counterclaim on Industries' communication of its Complaint to the HCHD, the claim fails as a matter of law because Micro-Waste cannot prove that Industries acted in bad faith. *See* Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."); Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999) ("[B]ad faith is a prerequisite to [a] state-law tortious interference claim; without it, the claim is preempted by patent law."). To satisfy the "bad

copy of the Complaint filed in this suit to the HCHD. *See* Document No. 108 at 22-24. Industries contends that these counterclaims fail as a matter of law because, *inter alia*, (1) Industries' alleged failure to respond to inquiries from Micro-Waste does not constitute a willful or intentional act of interference that would support an intentional interference claim; (2) Industries' communication of the Complaint to the HCHD was not a commercial advertisement that gave rise to liability under the Lanham Act; and (3) there is no evidence that Micro-Waste suffered any injury as a result of Industries' conduct.

Micro-Waste's claim that Industries engaged in tortious interference by failing to respond to Micro-Waste's inquiries about the License Agreement fails as a matter of law. To prevail on its tortious interference claim, Micro-Waste must establish, among

---

faith" standard, a plaintiff must establish that the patent holder's assertions of infringement were "objectively baseless." *See* Globetrotter, 362 F.3d at 1375-77. A claim is "objectively baseless" only if "no reasonable litigant could realistically expect success on the merits." Id. at 1376 (citations omitted).

Here, Industries had a good faith basis for its assertion in its Complaint that the License Agreement was fraudulently induced--namely, Ventre's representation that he signed the License Agreement based on Bollinger's allegedly fraudulent conduct related to the HCHD project--and a genuine controversy exists as to the validity and enforceability of the '000 patent. Thus, the '000 patent is not so obviously invalid, unenforceable, and/or not infringed as to render the contents of Industries' Complaint objectively baseless. Because Micro-Waste presents no evidence that Industries knew the allegations in its Complaint were false, Micro-Waste does not raise a genuine issue of material fact that Industries sent the Complaint to the HCHD in bad faith.

other things, that Industries committed a willful and intentional act of interference. *See*, *e.g.*, Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex. 1996). Micro-Waste has cited no authority for the proposition that a failure to act can satisfy the willful and intentional act of interference element of a tortious interference claim, particularly where, as here, there is no evidence that Industries had a duty to act. Moreover, there is no evidence that Industries' alleged failure to respond to Micro-Waste's inquiries influenced the HCHD or its conduct. *See*, *e.g.*, Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927 (Tex. 1993) (stating that a "willful and intentional act" requires evidence of the defendant's "knowing inducement" of a contract obligor's wrongful action); John Paul Mitchell Sys. v. Randalls Food Mkts., 17 S.W.3d 721, 731 (Tex. App.--Austin 2000) (overturning jury verdict on tortious interference claim where there was "no evidence that [the defendant] persuaded anyone to breach its contractual relationship with [the plaintiff]"); Davis v. HydPro, Inc., 839 S.W.2d 137, 139 (Tex. App--Eastland 1992) ("A necessary element of the plaintiff's cause of action [for intentional interference] is a showing that the defendant *took an active part in persuading a party to a contract to breach it*."). Notwithstanding Micro Waste's objection to Industries' alleged nonresponsiveness, such inaction as a matter of law is not tortious interference. Industries is

therefore entitled to summary judgment on Micro-Waste's counterclaim for tortious interference.

Likewise, Micro-Waste has failed to raise a genuine issue of material fact that Industries violated § 43(a)(1)(A) of the Lanham Act. In relevant part, § 43(a)(1)(A) imposes liability on any person who identifies a product in a manner that is likely to cause confusion among consumers or to deceive consumers as to the association of the producer of the product with another person. *See* 15 U.S.C. § 1125(a)(1)(A) (imposing liability on "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which--(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person"). To prevail on a Lanham Act claim, a plaintiff generally must prove: (1) that the defendant made a false or misleading statement of fact about a product;[5] (2) that the statement actually

---

[5] Industries contends that the false or misleading statement of fact must have been made in a commercial advertisement. *See* Document No. 111 at 18 (citing Logan v. Burgers Ozark Country Cured Hams, Inc., 263 F.3d 447, 462 (5th Cir. 2001) (stating that the plaintiff must establish "that the defendant made a false statement of fact about its product in a commercial advertisement" in order to prevail on a false advertising claim). However, it is § 43(a)(1)(B), not § 43(a)(1)(A), that imposes such a limitation. *Compare* 15 U.S.C. § 1125(a)(1)(A) *with* § 1125(a)(1)(B); *see also* MCW, Inc. v. Badbusinessbureau.com, LLC, No. Civ. A. 3:02-CV-2727, 2004 WL 833595, at *11, n.14 (N.D. Tex. Apr. 19, 2004) (distinguishing between unfair competition claims and false advertising claims).

deceived or tended to deceive its intended audience; (3) that the deception was material, in that it tended to influence purchasing decisions; (4) that the defendant caused the false statement to enter interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc. *See* King v. Ames, 179 F.3d 370, 373-74 (5th Cir. 1999); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1383 n.3 (5th Cir. 1996).

Assuming *arguendo* that Industries' delivery of the Complaint to the HCHD is actionable under § 43(a)(1)(A), Micro-Waste has presented no evidence to support such a claim. Micro-Waste does not identify any particular allegations in the Complaint that it contends are objectively false or misleading about Micro-Waste's MDU; nor does Micro-Waste present any evidence that the contents of the Complaint actually deceived or tended to deceive the HCHD, influenced the HCHD's purchasing decision, or caused Micro-Waste actual damage or loss. To the contrary, Micro-Waste's president, Robert Bollinger ("Bollinger") testified in his deposition that Industries' communication of the Complaint to the HCHD did not cause Micro-Waste to lose the sale of the MDU to the HCHD and that he was not aware of any other potential business that Micro-Waste lost as a result of Industries' communications with the HCHD. *See* Document No. 84 at 215-21. A representative of the HCHD agreed that Industries' communications with the HCHD did not cause the

HCHD to stop working with Micro-Waste. Id. ex. 60 at 56-60.[6] In sum, Micro-Waste has failed to raise a genuine issue of material fact on its Lanham Act claim, and Industries' motion for summary judgment on this claim will therefore be granted.

## IV.   Order

Based on the foregoing, it is

ORDERED that Micro-Waste Corporation's Motion to Strike and Exclude Plaintiff's Expert Witness (Document No. 76) is DENIED AS MOOT regarding testimony by Edward Krisiunas on the issue of infringement of the '000 patent because Industries represents it will not elicit testimony on that subject, and the motion is otherwise DENIED. It is further

ORDERED that Micro-Waste's Motion for Summary Judgment (Document No. 78) is DENIED, and Micro-Waste's Motion to Strike (Document No. 137) is DENIED as MOOT. It is further

ORDERED that Sanitec Industries Inc.'s Motion for Summary Judgment (Document No. 82) is GRANTED IN PART, and it is ADJUDGED that the Accused Products are within the scope of Industries' '000

---

[6] Although Micro-Waste asserts--with no supporting summary judgment evidence--that "[a]s a result of Industries' bad faith acts, HCHD has refused to install or use the MDU it purchased from Micro-Waste and has reduced its repair and maintenance business to Micro-Waste significantly during the pendency of the lawsuit," see Document No. 108 at 23, the HCHD representative testified that the reason the HCHD unit was not being operated was because the HCHD had not yet issued a contract for the necessary site preparation work, see Document No. 84 ex. 60 at 135-38.

patent and that the MDU sold by Micro-Waste to the HCHD is within the scope of one or more claims of the '000 patent. Additionally, Micro-Waste's tortious interference and Lanham Act counterclaims are DISMISSED on the merits. Industries' motion is in all other things DENIED. Remaining for trial are (1) Industries' Lanham Act, unfair competition, fraud, and conversion claims; (2) Micro-Waste's defenses to Industries' patent infringement claim; (3) Micro-Waste's claim for a declaratory judgment that the '000 patent is invalid and/or unenforceable; and (4) Micro-Waste's claim for breach of contract.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 2nd day of June, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE